IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:26-cv-121

| | |
|---|---|
| ARYANA BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **COMPLAINT** |
| ) | |
| SECURITAS SECURITY SERVICES ) | **JURY TRIAL DEMANDED** |
| USA, INC. ) | |
| ) | |
| Defendant. ) | |

## I. INTRODUCTION

1. Aryana Brown ("Plaintiff" or "Aryana") began working for Securitas Security Services USA, Inc. ("Defendant" or the "Company") in or around December 2022. Aryana was a good employee and did her job well for Defendant. But that went out the window when Aryana's bosses learned she identified as a transgendered woman. Defendant fired Aryana on the basis of her sex.

2. Aryana now turns to this Court to be made whole for her harms and losses. Aryana brings this action against the Company for Wrongful Discharge in Violation of North Carolina Public Policy.

## II. PARTIES, JURISDICTION AND VENUE

3. Plaintiff resides in Gaston County, North Carolina.

4. Securitas Security Services USA, Inc. is a company incorporated in Delaware with its principal office in Parsippany, New Jersey. Its North Carolina registered office is located at

1

160 Mine Lake Ct. Ste. 200 Raleigh, NC 27615-6417.

5. Plaintiff worked for Defendant in Mecklenburg County, North Carolina.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds the value of $75,000, exclusive of interest and costs, and is between citizens of different States.

7. Venue is proper in the Western District of North Carolina, Charlotte Division, because: Defendant has a substantial presence in Charlotte, North Carolina and conducts a great deal of business in Charlotte. At all relevant times, Plaintiff worked for Defendant at 8000 Tuckaseegee Road, Charlotte, North Carolina 28214. Moreover, the facts and circumstances of the case arise in Charlotte, North Carolina. But for Defendant's illegal conduct, Plaintiff would have continued working in Mecklenburg County, North Carolina.

### III. FACTUAL STATEMENT

8. The Company hired Aryana as a Security Guard on or around December 6, 2022.

9. On or around December 19, 2022, another officer, Jasmine Hayes, approached Aryana and started asking her questions about my gender. She replied honestly, and told her that she was a transgender woman. Hayes continued asking extremely personal questions about her body and surgeries.

10. Later that day, Aryana reported the harassment to her manager, Donnie Montgomery.

11. Not long after this, on or around December 24, 2022, Montgomery singled Aryana out, and told her that none of the other associates were allowed to talk to her. He told Aryana that if she wanted to talk to people, it had to be on her break. Aryana felt this was strange, since no other officer or associates were being asked to follow this rule.

12. On or around January 6, 2023, Aryana arrived at the jobsite and was asked to do some patrols. However, someone had taken her vest, and another officer, Marilin Colon, told her to go to HR.

13. HR then told Aryana to radio the Safety department to get a vest. As Aryana was walking back from HR, Hayes yelled at her and told her that she needed a vest. Aryana tried to ask Hayes for the Safety phone number, but Hayes waved her off and told her to go away.

14. Aryana decided to ask Colon for the number instead, and while they were talking, Hayes walked up and told her once again to put on a vest. Aryana told her that she was trying, and she told me that she was "doing too much." Aryana responded that the situation was being handled with the vest, and that her input was not needed. Hayes then started yelling at her, calling her "sir."

15. Hayes told told her, "you're a man, you want to be me." Hayes then put her hands against her vagina and said, "I have a real p*ssy, I got three kids, everything on you is fake. You'll never, be a real girl, little BOY."

16. This harassment obviously upset Aryana, and she walked away and immediately wrote an incident report. Montgomery decided to write up both Hayes and Aryana. The write-up came after Montgomery found out that Aryana was a trans woman.

17. Later that day, on or around January 6, 2023, Montgomery pulled Aryana into the office and, asked, "Is it true? What made you this way?" He was referring to her transgender identity. He then told Aryana that he wished she'd never told him she was transgender. He went so far as to say, "I'm shocked, because you're a beautiful girl … I have to hawk boys away from you because they talk to you. Do they know this about you [being trans]?"

3

18. After his comments, Aryana did not feel like she belonged in the workplace. She asked Montgomery what was going on about the incident, and he assured her that he had sent the report to HR, and they were handling it.

19. On or around January 11, 2023, Aryana emailed the district manager the list of documented harassment incidents she had experienced at the site. She followed up with the manager to see how they were dealing with it, yet her emails were never acknowledged.

20. To cope with the hostile environment she was experiencing, Aryana called the Employee Assistance Program (EAP) hotline to request a therapist on or around January 21, 2023.

21. After this, the work environment continued to get more hostile. In or around January and February 2023, Aryana was written up numerous times for pretextual reasons, including "rolling her eyes," and "having a bad attitude." She was the only person being written up for these things, and as such she called the HR hotline about the situation. Aryana was told there would be an investigation, but she was never given any updates.

22. Aryana met with EAP therapist Reia Chapman on or around February 8, 2023. Aryana confided to her that she no longer felt mentally okay to report to work, and that she felt no one was there to help her. She told Aryana that she was only depressed because she was dealing with this particular situation. The therapist told her that her two options essentially would be to find a new job or take legal action. With this in mind, Aryana went back to the drawing board to a find a new therapist. Around this time, Aryana also filed a formal complaint with the HR hotline.

23. Aryana continued to do her job well, and on or around February 10, 2023, an Amazon

associate approached her and reported that someone was stealing. She did everything protocol allowed, including getting a description and alerting officer Colon, who said she would handle the situation. Aryana then returned to her position.

24. On February 14, 2023, Montgomery pulled Aryana into a conference room to discuss the theft situation. He told her that it would be her last day, because the way Aryana "handled" the situation was her last strike. Montgomery made a big deal out of the Amazon associate's anger with her over supposedly my lack of handling the situation. But this was pretext.

25. After the meeting, Montgomery asked Aryana to leave the property and talk to her district manager, Eddie Vazquez, about finding a new placement. Aryana called and texted Vazquez, yet she never received a response. Vazquez continued to ignore her, leaving Aryana without a job. The Company fired Aryana.

26. On July 20, 2023, Aryana filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") through counsel. That charge remains under investigation with the EEOC.

## IV. LEGAL CLAIMS

### Count I
### *(Wrongful Discharge in Violation of Public Policy)*

27. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

28. Plaintiff was an at-will employee of Defendant.

29. Defendant employed at least fifteen (15) employees at all relevant times.

30. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a), seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of race, religion, color, national origin, age, sex or handicap.

31. Defendant violated the public policy of North Carolina as set forth above by terminating Plaintiff because of her sex.

32. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, diminution in her earning capacity, severe emotional distress, damage to her reputation, anxiety, depression, embarrassment, humiliation, and her peace of mind has been disturbed. Plaintiff's back pay damages alone exceed the jurisdictional threshold of $75,000.

33. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## **JURY TRIAL DEMANDED**

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment again Defendant and order the Defendant to pay Plaintiff back pay, front pay, and compensatory damages in an amount to be determined at trial;

2. Award Plaintiff punitive damages pursuant to N.C. Gen. Stat. § 1D-1 *et seq*.

3. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with

this action;

4. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

5. Grant Plaintiff a trial of this matter by a jury.

This the 16th day of February, 2026.

/s/ Kevin P. Murphy
Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
400 Clarice Ave, Suite 100
Charlotte, North Carolina 28204
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com
*Attorneys for Plaintiff*